**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

JOHN GALLUP & : 
ASSOCIATES, LLC, :
 :
     Plaintiff, :
 : CIVIL ACTION NO.
     v. : 1:12-CV-03779-RWS
 :
ANNIE CONLOW, :
 :
     Defendant. :

## ORDER

This case comes before the Court on Defendant Annie Conlow's

("Defendant") Motion to Dismiss [7].  After reviewing the record, the Court

enters the following Order.

## Background

Plaintiff John Gallup & Associates, LLC ("Plaintiff") brings this suit

against Defendant, raising claims for breach of fiduciary duty, breach of

contract, and violation of the Georgia Computer Systems Protection Act,

O.C.G.A. § 16-9-92 et seq., arising out of Defendant's employment with

Plaintiff.  (See generally Pl.'s First Am. Compl. ("Am. Compl."), Dkt. [6].)

Defendant was a long time employee of Plaintiff, a limited liability company

AO 72A
(Rev.8/82)

"engaged in consulting work for the United States Department of Defense and related entities and businesses."  (Id. ¶ 4; Pl.'s Br. in Opp'n of Mot. to Dismiss ("Pl.'s Opp'n Br."), Dkt. [8] at 2 of 21.)  Defendant began working for Plaintiff in 2007 at Plaintiff's office in San Diego, California and remained Plaintiff's employee until August 2012, when "[Defendant] unexpectedly resigned immediately."  (Conlow Aff., Dkt. [7-2] ¶ 7; Am. Compl., Dkt. [6] ¶ 39.) Defendant now moves to dismiss the Amended Complaint for lack of personal jurisdiction.

## I.    Factual Allegations of the First Amended Complaint

The following factual allegations, taken from the First Amended Complaint, form the basis of Plaintiff's claims against Defendant.  First, Plaintiff alleges that while employed by Plaintiff, Defendant made a number of unauthorized purchases with Plaintiff's money.  (See generally Am. Compl., Dkt. [6].)  Defendant "had the ability to make certain purchases charged to [Plaintiff's] company account from staples.com."  (Id. ¶ 4.)  From 2009 to 2011, Defendant "made $5,887.51 in unauthorized purchases charged on [Plaintiff's] staples.com account."  (Id. ¶ 5.)  Defendant "also made $4,303.97 in unauthorized purchases charged on [Plaintiff's] staples.com account in the

AO 72A
(Rev.8/82)

calendar year 2012." (Id. ¶ 6.)  In addition to the purchases from staples.com,

Defendant "made [ ] unauthorized purchase[s] of $158.98 from amazon.com . . .

and $74.68 from Microsoft Windows 7 anytime upgrade." (Id. ¶ 7.)  Defendant

"also made other unauthorized charges which total $112.99." (Id. ¶ 8.)  Finally,

Defendant made unauthorized purchases on an American Express card

belonging to Rick D'Arienzo ("D'Arienzo")—the individual who subsequently

purchased the "sole membership interests in [Plaintiff]" in December 2011.  (Id.

¶¶ 11, 13, 23.)

    Second, Plaintiff alleges that while employed by Plaintiff, Defendant

gave herself a number of unauthorized reimbursements.  (See generally Am.

Compl., Dkt. [6].)  After January 2012, Defendant "gave herself unauthorized

reimbursements from [Plaintiff's] payroll account for alleged expenses of

$20,384.50." (Id. ¶ 9.)  Defendant "also gave herself an unauthorized raise

resulting in $1,470.00 in additional unauthorized compensation to her from

[Plaintiff's] payroll account." (Id. ¶ 10.)  These "improper payments . . .

occurred through the internet via Paychex, an online payroll service company."

(Id. ¶ 20.)  Defendant entered the "unauthorized reimbursements . . . online into

Paychex and then Paychex processed through [Plaintiff's] bank accounts for funding in direct deposit checking accounts." (Id.)

As stated above, D'Arienzo, an employee of Plaintiff, purchased the sole membership interests in Plaintiff in December 2011. (Id. ¶ 11-13.) Effective January 1, 2012, D'Arienzo "moved the main office of [Plaintiff] to Marietta, Georgia." (Id. ¶ 13.) At that time, Plaintiff maintained offices in a number of cities including Marietta, Georgia and San Diego, California. (Id. ¶ 14.) "In May 2012, [Plaintiff] moved its main computer server to the Marietta, Georgia principal office." (Id. ¶ 15.) Prior to May 2012, Plaintiff had three computer servers, all of which replicated information in real time. (Id. ¶ 16.) These servers were located in San Diego, California; Marietta, Georgia; and Huntsville, Alabama. (Id.) Defendant acted as "the administrator of that main server even after [Plaintiff] moved it to Marietta, Georgia, and she had administrative access to all three servers during her employment." (Id. ¶ 18.) Furthermore, Defendant "worked off the main server and she had access to that main server's files on a daily basis." (Id. ¶ 19.)

Plaintiff alleges that, after January 1, 2012, "and for much of her prior employment history, [Defendant's] daily duties involved emails and telephone

4

conversations with [Plaintiff's] office personnel in all locations including the principal office in Marietta, Georgia." (Id. ¶ 26; Henry D'Arienzo Aff., Dkt. [8-1] ¶ 18.) Defendant was "directly involved in obtaining the necessary corporate registration through the Georgia Secretary of State's Corporations Division for [Plaintiff] to move its principal place of business to Marietta, Georgia." (Am. Compl., Dkt. [6] ¶ 28; Henry D'Arienzo Aff., Dkt. [8-1] ¶ 18.) These interactions "included extensive communications between [Defendant] and the Georgia Secretary of State's office." (Am. Compl., Dkt. [6] ¶ 28; Henry D'Arienzo Aff., Dkt. [8-1] ¶ 18.) Defendant also "established car insurance for [Plaintiff's] leased vehicle . . . through [an] agent in Marietta, Georgia" and "setup autodrafting for a Nissan Lease of a [Plaintiff] leased vehicle . . . in Kennesaw, Georgia." (Am. Compl., Dkt. [6] ¶ 29-30; Henry D'Arienzo Aff., Dkt. [8-1] ¶¶ 21-22.) Defendant also "repeatedly sent packages to, and received packages from, the Marietta, Georgia office of [Plaintiff]." (Am. Compl., Dkt. [6] ¶ 31; Henry D'Arienzo Aff., Dkt. [8-1] ¶ 23.) Additionally, Defendant's "final paycheck came from [one of Plaintiff's] account[s] at SunTrust Bank, in Georgia." (Am. Compl., Dkt. [6] ¶ 22.) Finally, as recently as August 2012, Defendant "did work on two projects in Georgia while employed by [Plaintiff]."

AO 72A
(Rev.8/82)

(Id. ¶ 32; Henry D'Arienzo Aff., Dkt. [8-1] ¶ 24.)  These projects were the

"Atlanta Metroplex Plan and the Atlanta Metropolitan Metroplex Update Plan."

(Am. Compl., Dkt. [6] ¶ 32; Lisa D'Arienzo Aff., Dkt. [8-2] ¶ 3.)  "Her

involvement in this work included writing text and background information

about the area and other related duties."  (Am. Compl., Dkt. [6] ¶ 32.)

  Plaintiff further alleges that, while still employed by Plaintiff,

"[Defendant] downloaded project files to work on through her laptop and an

external hard drive, as did most [of Plaintiff's] employees.  [Plaintiff's]

employees are then required to send the files back to [Plaintiff's] servers,

including the main server in Marietta, Georgia."  (Id. ¶ 35; Henry D'Arienzo

Aff., Dkt. [8-2] ¶ 27.)  Despite the latter requirement, Defendant never returned

certain files to Plaintiff's server.  (Am. Compl., Dkt. [6] ¶ 36; Henry D'Arienzo

Aff., Dkt. [8-2] ¶ 28.)  "The files she downloaded from the server to her laptop

and to the external drive were never located."  (Am. Compl., Dkt. [6] ¶ 33.)

Shortly before Defendant resigned, she "also deleted most of the information

contained in her personnel files on [Plaintiff's] main server, which was located

in Marietta, Georgia."  (Id. ¶ 38; Henry D'Arienzo Aff., Dkt. [8-2] ¶ 30.)

AO 72A
(Rev.8/82)

Finally, Plaintiff alleges that when Defendant resigned, she "did not leave all of the equipment in the San Diego office." (Am. Compl., Dkt. [6] ¶ 33.) Defendant's "unauthorized personal purchases, most of which were delivered to [Defendant's] home address, were not left at the [Plaintiff's] office in San Diego, California." (Id. ¶ 34; Lisa D'Arienzo Aff., Dkt. [8-2] ¶ 4.) Defendant "also did not leave an external drive at the office upon resignation." (Am. Compl., Dkt. [6] ¶ 36.) Defendant "returned two empty external hard drives to [Plaintiff] and a laptop hard drive, all of which were completely erased," even though "[Defendant] knew that those hard drives were not to be deleted." (Id. ¶¶ 40-41.) She eventually "mailed back two thumbdrives, but . . . those thumbdrives were blank." (Id. ¶ 37.)

## II.    Plaintiff's Claims

Plaintiff's first claim against Defendant is for breach of fiduciary duty. (Id. ¶¶ 46-51.) In support of this claim, Plaintiff alleges that Defendant owed a fiduciary duty to Plaintiff because "[Defendant] had access to [Plaintiff's] charge accounts and to the Company payroll system." (Id. ¶ 47.) Plaintiff further alleges that Defendant breached this duty "on numerous occasions by

7

making unauthorized purchases and unauthorized reimbursements to herself, as well as giving herself an unauthorized raise."  (Id. ¶ 48.)

Plaintiff's second claim is for breach of contract.  In support of this claim, Plaintiff alleges that Defendant "was an employee of [Plaintiff] and, as such, had a duty to [Plaintiff] to perform her duties in a reasonable way."  (Id. ¶ 53.)  Plaintiff further alleges that Defendant breached this duty "by embezzling the money as alleged above, and failing to deliver the hard drives with all the work product on them."  (Id. ¶ 54.)

Plaintiff's final claim is that Defendant violated the Georgia Computer Systems Protection Act, O.C.G.A. § 16-9-92 et seq.  In support of this claim, Plaintiff alleges that Defendant "deleted data from the two external hard drives and the laptop with the hard drive she used on behalf of [Plaintiff]," and that "[Defendant] was not authorized to delete this information."  (Id. ¶¶ 57, 59.)  Plaintiff further alleges that Defendant violated the Act by "deleting and removing computer programs and data from a computer and the main server when the main server was located in Marietta, Georgia."  (Id. ¶ 60.)

8

### III.    Defendant's Motion to Dismiss

Defendant now moves to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2). (Def.'s Mot. to Dismiss, Dkt. [7] at 1 of 2.)  Defendant argues that the Court lacks personal jurisdiction over Defendant both under the Georgia long arm statute, O.C.G.A. § 9-10-91, as well as the Due Process Clause of the Fourteenth Amendment.  (Def.'s Br. in Supp. of Mot. to Dismiss ("Def.'s Br."), Dkt. [7-1] at 2-3 of 23.)

Specifically, Defendant argues that the Court lacks personal jurisdiction because "[Defendant] is a California resident.  She has never lived in Georgia, and she has never worked in Georgia."  (Id. at 3 of 23.)  Furthermore, Defendant contends that "[she] has never traveled to Georgia for any personal or business purposes except that she has occasionally had layovers at the Atlanta-Hartsfield Airport in order to transfer to connecting flights on the way to other destinations."  (Id. at 3-4 of 23.)  In fact, Defendant claims that "[she] has never been outside of the Atlanta-Hartsfield Airport while in the State of Georgia."  (Id. at 4 of 23.)  Furthermore, Defendant contends that "[i]n her capacity as [Plaintiff's] employee, [Defendant] "did not perform work related to

any project management contracts being fulfilled by [Plaintiff] in Georgia." (Id. at 6 of 23.)  Finally, Defendant contends that "[a]ny hard drives and [Defendant's] laptop were located in California at [Plaintiff's] San Diego offices at all relevant times."  (Id. at 8 of 23.)

**Discussion**

I.      **Defendant's Motion to Dismiss**

A.      Legal Standard: 12(b)(2) Motion to Dismiss

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009).  "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'"  Id. (quoting Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)).  "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff."  Meier, 288 F.3d at 1269.

10

B.    Analysis

Federal courts "use a two-step inquiry in determining whether the exercise of personal jurisdiction of a non-resident defendant is proper.  First [courts] examine whether the exercise of jurisdiction would be appropriate under that state's long arm statute.  Second, [courts] examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009).  "When a federal court uses a state long arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court."  Lockard v. Equifax, Inc., 163 F.3d 1259, 1265 (11th Cir. 1998).

1.    *Georgia Long Arm Statute*

Under the Georgia long arm statute, "[a] court of [Georgia] may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts . . . enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she":

11

> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; [or]
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . . [1]

O.C.G.A. § 9-10-91.  Plaintiff alleges that the Court has personal jurisdiction over Defendant pursuant to subsections (1) and (3).[2]  The Court will consider Plaintiff's arguments under the Georgia long arm statute before considering whether the exercise of personal jurisdiction over Defendant would comport with the Due Process Clause of the Fourteenth Amendment.

---

[1] The other provisions of this code section, §§ 9-10-91(4)-(6), are not relevant to this action as they pertain to ownership of real property (subsection (4)) and to domestic relations (subsections (5) and (6)).

[2] Although Plaintiff appears to raise an argument under subsection (2) of the long arm statute (while, at the same time, mistakenly referencing subsection (3)) (Pl.'s Opp'n Br., Dkt. [8] at 11), Plaintiff only alleges personal jurisdiction in the Amended Complaint under subsections (1) and (3) of the long arm statute.  (Dkt. [6] ¶ 2.) Moreover, in its brief, Plaintiff plainly states that "[t]he affidavits presented by Plaintiff establish that Conlow is subject to long arm jurisdiction under [subsections (1) and (3)]."  (Pl.'s Opp'n Br., Dkt. [8] at 9.)  Accordingly, the Court will not consider subsection (2) of the long arm statute.

####     i.     "Transacts any business within this state"

As Defendant correctly states, personal jurisdiction exists under subsection (1)—the "transacting business" prong of the Georgia long arm statute—if "(1) the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia], (2) <u>the cause of action arises from or is connected with such act or transaction</u>, and (3) the exercise of jurisdiction . . . does not offend traditional fairness and substantial justice."[3]  <u>Aero Toy Store, LLC v. Grieves</u>, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006) (emphasis added). The Supreme Court of Georgia has made it clear that "nothing in subsection (1) requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the state."  <u>Innovative Clinical & Consulting Services, LLC v. First Nat. Bank of Ames</u>, 620 S.E.2d 352, 355 (Ga. 2005).  "The defendant, however, must 'fairly be said' to have

---

[3] Although Plaintiff states in perfunctory fashion that "[Defendant]'s minimum contacts may give rise to both general and specific jurisdiction" (Pl.'s Opp'n Br., Dkt. [8] at 13), the argument in favor of personal jurisdiction in Plaintiff's brief is limited to specific jurisdiction (<u>id.</u> at 9-18).  Moreover, to the extent general jurisdiction is permitted under the Georgia long arm statute, it would not exist here. <u>See</u> <u>Mitsubishi Motors Corp. v. Colemon</u>, 658 S.E.2d 843, 846-47 (Ga. Ct. App. 2008) (noting "factors relevant to the existence of [general] jurisdiction include regularly doing business in the state [and] deriving substantial revenue from goods or services in the state").  As discussed <u>infra</u>, Defendant's contacts with the state of Georgia do not rise to this level.

13

literally 'transacted' business in Georgia." <u>Cold Smoke Capital, LLC v. Gross</u>, No. 1:11-CV-3558-WSD, 2012 WL 3612626, at *4 (N.D. Ga. Aug. 21, 2012) (quoting <u>Diamond Crystal Brands, Inc. v. Food Movers Intl., Inc.</u>, 593 F.3d 1249, 1264 (11th Cir. 2010)).

Plaintiff argues that Defendant may be said to have transacted business in Georgia based on a number of contacts with the state. Specifically, as stated in the Background section, Plaintiff alleges that "[Defendant's] daily duties involved emails and telephone conversations with [Plaintiff's] office personnel in all locations including the principal office in Marietta, Georgia." (Am. Compl., Dkt. [6] ¶ 26.) Plaintiff also alleges that "[Defendant] was directly involved in obtaining the necessary corporate registration through the Georgia Secretary of State's Corporations Division for [Defendant] to move its principal place of business to Marietta, Georgia and included extensive communications between [Defendant] and the Georgia Secretary of State's office." (<u>Id.</u> ¶ 28.) Furthermore, Plaintiff alleges that Defendant "deleted most of the information contained in her personnel files on [Defendant's] main server, which was located in Marietta, Georgia." (<u>Id.</u> ¶ 38.) Finally, Plaintiff alleges that Defendant "established car insurance for [Defendant's] leased vehicle" with an

agent in Georgia; "setup autodrafting for a Nissan Lease of [Defendant's] leased vehicle" in Georgia; "repeatedly sent packages to, and received packages from, the Marietta, Georgia office"; and "did work on two projects in Georgia while employed by [Plaintiff] . . . includ[ing] writing text and background information about the area and other related duties." (Id. ¶¶ 29-32.)

Defendant argues that she did not transact any business in Georgia because "[she] never traveled to Georgia, except for the occasions on which [she] was required to transfer to connecting flights at the Atlanta . . . Airport while traveling to other destinations." (Conlow Aff., Dkt. [7-2] ¶ 8.) Furthermore, "[Defendant did] not perform work on contracts that were performed in Georgia" and "[her] job duties did not include seeking out new business or contracts in Georgia." (Id. ¶ 9; Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply"), Dkt. [10] at 4 of 16.) Defendant also disputes the allegation that she worked on Plaintiff's Atlanta Metroplex Plan or Atlanta Metropolitan Metroplex Update Plan. (Conlow Aff., Dkt. [7-2] ¶ 11.)

Defendant also claims that "the 'payroll' account that [she is] alleged to have mishandled was maintained in California" and "the credit card used for [Plaintiff's] online purchases was billed to . . . California." (Id. ¶ 10.) Finally,

15

Defendant contends that "[Defendant's] perfunctory email and telephone contact with [Plaintiff's] employees in Georgia pursuant to her 'daily duties' and her assistance with obtaining the [Plaintiff's] registration to do business in Georgia cannot form the basis for this Court to exercise jurisdiction under the Georgia long arm statute."  (Def.'s Br., Dkt. [7-1] at 14 of 23.)

The Court agrees with Defendant and holds that it cannot assert personal jurisdiction over Defendant pursuant to subsection (1) of the Georgia long arm statute.  First, as explained below, Plaintiff's claims for breach of fiduciary duty and breach of contract fail the requirement of the Georgia long arm statute that "the cause of action arise[ ] from or is connected with" Defendant's transaction of business in Georgia.  Aero Toy Store, 631 S.E.2d at 737.

Plaintiff's claim for breach of fiduciary duty arises out of Defendant allegedly making unauthorized purchases from staples.com and amazon.com and on D'Arienzo's American Express credit card, and from Defendant giving herself an unauthorized raise from Plaintiff's payroll account.  (Am. Compl., Dkt. [6] ¶¶ 10, 23, 48.)  The claim, therefore, does not arise out of any of Defendant's contacts with the state of Georgia, which contacts Plaintiff claims constitute "transacting business" in the state.  In particular, the claim does not

16

arise out of Defendant's (1) email and telephone correspondence with Plaintiff's office personnel in Georgia; (2) involvement in obtaining Plaintiff's corporate registration with the Georgia Secretary of State; (3) deletion of information contained on Plaintiff's computer server in Georgia; (4) establishment of car insurance and autodrafting for Plaintiff-leased vehicles in Georgia; (5) mailing of packages to Plaintiff's Georgia office and receipt of packages from that office; or (6) alleged work on Plaintiff's two Georgia projects.  Accordingly, even if the foregoing contacts with the state of Georgia constitute the transaction of business in the state, Plaintiff's claim for breach of fiduciary duty does not "arise out of" and is not "connected with" those contacts.  The Court, therefore, may not exercise personal jurisdiction over Defendant under subsection (1) of the Georgia long arm statute with respect to this claim.

The same is true with respect to Plaintiff's claim for breach of contract. This claim is based on the allegations that Defendant embezzled money from Plaintiff (through the unauthorized purchases and raise discussed above) and failed to return hard drives to Plaintiff.  (Id. ¶ 54.)  Thus, for the reasons stated above, the claim does not arise out of Plaintiff's alleged transaction of business

17

in Georgia (assuming, arguendo, that Defendant's alleged contacts with the state constitute transacting business).  Additionally, with regard to the hard drives, Defendant contends, and Plaintiff does not dispute, that "[t]he external drives and laptop computer . . . were kept in California."  (Conlow Aff., Dkt. [7-2] ¶ 4.)  As such, any alleged misconduct relating to that equipment would have taken place in California and is not connected to Defendant's contacts with Georgia.  Because Plaintiff's breach of contract claim does not "arise out of" and is not "connected with" Defendant's contacts with Georgia, which Plaintiff contends constitute transacting business, the Court may not exercise personal jurisdiction over Defendant under subsection (1) of the Georgia long arm statute with respect to Plaintiff's breach of contract claim.

Nor is the exercise of personal jurisdiction proper under subsection (1) of the Georgia long arm statute with respect to Plaintiff's claim under the Georgia Computer Systems Protection Act.  As stated in the Background section, supra, this claim stems from two allegations:  First, Defendant "deleted data from the two external hard drives and the laptop with the hard drive she used on behalf of [Plaintiff]," and second, Defendant "delet[ed] and remov[ed] computer

18

programs and data from a computer and the main server when the main server was located in Marietta, Georgia."

With respect to the first allegation, as stated above, the alleged misconduct relating to the external hard drives took place in California. Therefore, to the extent Plaintiff's claim is based on this alleged misconduct, the claim does not "arise out of" and is not "connected with" Defendant's contacts with Georgia.

To the extent Plaintiff's claim under the Georgia Computer Systems Protection Act is based on the second allegation, the claim does "arise out of" or is "connected with" one of Defendant's alleged contacts with the state of Georgia—namely, the deletion of information contained on Plaintiff's main computer server, located in Georgia. This contact, however, does not constitute "transacting business" in Georgia and therefore cannot give rise to personal jurisdiction under subsection (1) of the Georgia long arm statute.

Whether Defendant's deletion of information off of Plaintiff's Georgia computer server constitutes "transacting business" in Georgia is best analyzed under the test set out in Zippo Manufacturing Company v. Zippo Dot Com, 952 F.Supp. 1119 (W. D. Pa. 1997). "[To determine] whether a nonresident has

19

submitted to a state's long arm jurisdiction by establishing the requisite

minimum contacts through Internet-based activity," Georgia courts have

adopted the Western District of Pennsylvania's analysis in Zippo.  Aero Toy

Store, 631 S.E.2d at 740.  The Zippo court created the following sliding scale to

analyze Internet-based contacts:

> At one end of the spectrum are situations where a defendant clearly
> does business over the Internet.  If the defendant enters into
> contracts with residents of a foreign jurisdiction that involve the
> knowing and repeated transmission of computer files over the
> Internet, personal jurisdiction is proper.  At the opposite end are
> situations where a defendant has simply posted information on an
> Internet Web site which is accessible to users in foreign
> jurisdictions.  A passive Web site that does little more than make
> information available to those who are interested in it is not
> grounds for the exercise [of] personal jurisdiction.  The middle
> ground is occupied by interactive Web sites where a user can
> exchange information with the host computer.  In these cases, the
> exercise of jurisdiction is determined by examining the level of
> interactivity and commercial nature of the exchange of information
> that occurs on the Web site.

Zippo, 952 F. Supp. at 1124 (emphasis added) (citations omitted).

The Court's finding that Defendant did not transact business in Georgia

when she deleted information from Plaintiff's Georgia server warrants little

discussion.  Although Plaintiff's computer server is not an Internet Web site,

the principle articulated in Zippo gives the Court guidance—"the exercise of

20

jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs." Id.  Defendant, by deleting information from Plaintiff's server, did not enter into contracts with residents of Georgia (Conlow Aff., Dkt. [7-2] ¶ 14) or reach out to Georgia residents in any way.  Nor was Defendant's deletion of information from the server a commercial transaction.  Accordingly, the Court may not exercise personal jurisdiction over Defendant under subsection (1) of the Georgia long arm statute with respect to Plaintiff's claim under the Georgia Computer Systems Protection Act.

### ii.    "Commits a tortious injury in this state"

Plaintiff also contends that the Court may exercise personal jurisdiction over Defendant under subsection (3) of the Georgia long arm statute.  As stated above, under this provision, "[a] court of [Georgia] may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts . . . enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she":

> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of

21

> conduct, or derives substantial revenue from goods used or
> consumed or services rendered in this state . . . .

O.C.G.A. § 9-10-91.  For the Court to assert personal jurisdiction over

Defendant pursuant to subsection (3), Defendant must meet the "limiting

conditions" of the statute.  Innovative Clinical, 620 S.E.2d at 354.  In other

words, under the plain language of the statute, the Court can only exercise

personal jurisdiction over Defendant if she "regularly does or solicits business,"

"engages in any other persistent course of conduct," or "derives substantial

revenue from goods used or consumed or services rendered in [Georgia]."

O.C.G.A. § 9-10-91(3).  Plaintiff has failed to allege sufficient facts to satisfy

any of these limiting conditions.

Plaintiff first alleges that Defendant derived substantial revenue from the

services she rendered to Plaintiff in Georgia because "[her] final paycheck came

from [Plaintiff's] account . . . in Georgia."  (Am. Compl., Dkt. [6] ¶ 22.)

Plaintiff also alleges that Defendant regularly solicited business in Georgia and

performed services regularly in Georgia based on her alleged contacts with the

state laid out in Part I.B.1.i., supra (where the Court discusses the "transacts any

business" prong of the Georgia long arm statute).

22

Defendant argues that she does not meet the limiting conditions of subsection (3) because "[w]hen a Georgia company pays its nonresident employee for doing his job, the employee's wages do not constitute 'substantial revenue' derived from 'services rendered in this state' for the purposes of personal jurisdiction."  (Def.'s Reply, Dkt. [10] at 6 of 16.)  Defendant contends that "[her] sole connection to Georgia is that [Plaintiff], [Defendant's] former employer, opened an office in Georgia several months before [she] resigned." (Conlow Aff., Dkt. [7-2] ¶ 9.)

The Court agrees with Defendant that Plaintiff cannot assert personal jurisdiction over her pursuant to subsection (3).  First, Defendant's salary does not indicate that Defendant "derive[d] substantial revenue from goods used or consumed or services rendered in this state."  In Bradlee Management Services, Inc. v. Cassells, the Supreme Court of Georgia held that it did not have personal jurisdiction under subsection (3) of the Georgia long arm statute over a Washington D.C. news reporter, even though he was an employee of a news agency with its principal place of business in Georgia, and even though he sent footage to his agency's Atlanta station, expecting it to be aired in Georgia.  292 S.E.2d 717, 720 (1982).  The Court reasoned that "[the reporter], as opposed to

23

[the news agency], does not derive substantial revenue from goods used or consumed or services rendered in this state." Id.  Like the defendant in Cassells, Defendant is an out of state employee of Plaintiff, a company registered in Georgia.  The fact that Defendant receives a paycheck from a Georgia company, even if that paycheck comes from an account held in Georgia, does not mean that Defendant "derives substantial revenue from . . . services rendered in this state."

The Court also holds that Defendant does not "regularly . . . solicit business, or engage[ ] in any other persistent course of conduct" in Georgia.  In Gee v. Reingold, the Georgia Court of Appeals held that it could not assert personal jurisdiction under subsection (3) of the Georgia long arm statute over a Tennessee lawyer even though he was "operating from his offices only a few miles from the Georgia state line," had been involved in up to ten cases in Georgia, and had even "appeared personally on a client's behalf . . . in Dalton, Georgia."  578 S.E.2d 575, 579 (Ga. Ct. App. 2003).  The Court reasoned that personal jurisdiction did not exist because "[the lawyer] did not maintain an office in Georgia, advertise in Georgia, derive a substantial income from

services rendered in Georgia, or engage in a persistent course of conduct with Georgia." Id.

Here, for example, Plaintiff alleges that "[Defendant's] daily duties involved emails and telephone conversations with [Plaintiff's] office personnel in all locations including the principal office in Marietta, Georgia." (Am. Compl., Dkt. [6] ¶ 26.) Plaintiff also alleges that Defendant was involved in obtaining Plaintiff's corporate registration with the Georgia Secretary of State. (Id. ¶ 28.) Under Gee, these contacts are not sufficient to satisfy the limiting conditions of subsection (3). Defendant has never visited Georgia and has never entered into any contracts in Georgia. Her "daily . . . emails and telephone conversations with [Plaintiff's] office personnel" were limited to fellow employees, and her contact with the Georgia Secretary of State's Corporations Division, as alleged, was not significant enough to constitute a "persistent course of conduct" or "the solicitation of business" under the Georgia long arm statute. (Id. ¶ 26.) Thus, the Court holds that it cannot exercise personal jurisdiction over Defendant pursuant to subsection (3).

25

2.      *Due Process*

Even if the Court could assert personal jurisdiction over Defendant under the Georgia long arm statute, Defendant's contacts with Georgia are insufficient to satisfy the Due Process Clause of the Fourteenth Amendment.  Under the Due Process Clause, the Court can only assert personal jurisdiction over defendants who establish "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

"The 'minimum contacts' required to confer personal jurisdiction over a nonresident may not be merely 'random,' 'fortuitous,' or 'attenuated.'"  Home Depot Supply, Inc. v. Hunter Mgmt. LLC, 656 S.E.2d 898, 901 (Ga. Ct. App. 2008) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  On the contrary, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privileges of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).  "[W]here the defendant

26

deliberately has engaged in significant activities within a state, or has created

continuing obligations between himself and residents of the forum, he

manifestly has availed himself of the privilege of conducting business there."

Burger King, 471 U.S. at 475-6 (internal citations and quotations omitted).

Here, Defendant has not established the requisite minimum contacts with

the state of Georgia to permit the exercise of personal jurisdiction as a federal

Due Process matter.  The Court recognizes that "[Defendant's] sole connection

to Georgia is that [Plaintiff], [Defendant's] former employer, opened an office

in Georgia several months before [Defendant] resigned."  (Conlow Aff., Dkt.

[7-2] ¶ 9.)  Defendant has never lived in Georgia, worked in Georgia, or even

traveled to Georgia except to transfer to connecting flights at the Atlanta

airport.  (Id. ¶¶ 4, 8.)  Furthermore, Defendant has never "negotiated, entered

into, or performed . . . a contract in the State of Georgia."  (Id. ¶ 14.)  As a

result, Defendant has not "purposefully avail[ed] [herself] of the privileges of

conducting activities within [Georgia]" and would not reasonably anticipate

being haled into court here.  Hanson, 357 U.S. at 253.

Thus, the Court holds that personal jurisdiction over Defendant does not

exist either under the Georgia long arm statute or the Due Process Clause of the

27

Fourteenth Amendment.  Defendant's Motion to Dismiss [7] therefore is

**GRANTED**.

## II.    Plaintiff's Request for Jurisdictional Discovery or to Transfer

In Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss the First Amended Complaint, Plaintiff asks the Court—in the event the Court is inclined to grant Defendant's Motion to Dismiss—to order limited jurisdictional discovery or to transfer the case to the United States District Court for the Southern District of California, in the alternative to dismissing the Complaint. The Court declines to grant either request.

First, the Court finds that jurisdictional discovery is not needed to resolve the issue of personal jurisdiction presented by Defendant's Motion to Dismiss. The Court also finds that Plaintiff has failed to show that transfer to the United States District Court for the Southern District of California would be proper. Indeed, the request was not presented by proper motion and is not supported by any legal citation or argument.  Accordingly, the Court finds dismissal for lack of personal jurisdiction appropriate.

28

**Conclusion**

In accordance with the foregoing, Defendant's Motion to Dismiss [7] is

**GRANTED**.  The Clerk is directed to enter judgment in favor of Defendant and

to close the case.

**SO ORDERED**, this  _21st_  day of June, 2013.


**RICHARD W. STORY**
United States District Judge

29